TSCHIRLEY, Respondent, v. STEVENS, et al, Appellants.

(228 N. W. 404.)

(File No. 6699. Opinion filed December 31, 1929.)

*J. M. Berry,* of Ipswich, for Appellants.

*Frank L. Sieh,* of Aberdeen, for Respondent.

BROWN, J. James G. Brady and Arthur E. Zemple entered into a partnership contract in writing by which they agreed to operate and conduct "a general live stock and farming business" during the years 1921, 1922, 1923, 1924, and 1925. Zemple contributed to the partnership "live stock, machinery, etc., of the value of $1,050.00." Brady contributed "personal property consisting of

horses, cattle wagons, harness, haying machinery, dwelling house, cattle sheds, horse barn, fences, windmill, water tank, pumps, engine, all of which is now situated on the following described lands in Edmunds County, South Dakota, to-wit: Sections 6, 7, 18, 19 and 20 in township 124, range 69, of the value of $7,500.00." In payment of the excess value contributed to the capital of the partnership by Brady, he got the partnership's note for $6,450, dated December 28, 1920, due December 1, 1921, with interest at 8 per cent per annum. Zemple was to occupy the premises, have charge of all of the company's property, have the right to all necessary farm products for his own table use. All seed and feed necessary in the business and all necessary repairs to the partnership property were to be paid for by the partnership. The business was to be conducted "on the above described land or so much of said land as they deem necessary for the proper conduct of their business." Zemple was to do 'all necessary farm labor together with the care of live-stock on said farm without expense or charge to the company, but all threshing bills shall be paid by the company." Neither party was to withdraw any funds from the company without the consent of the other, all outstanding indebtedness was to be paid as fast as possible, and after all indebtedness was paid the earnings of the company were to be equally divided, and at the expiration of the term of the partnership, unless otherwise agreed, the entire company property was to be sold and the proceeds, after payment of all debts, were to be equally divided. All leases of lands for the company were to be taken and held in the name of the company and all rent and expenses therefor paid for by the company.

The contract contained no provision for any sale or division of live stock or farm products prior to the expiration of the term of the contract, and it contained no definite description of the lands to be occupied or farmed. Such lands were in sections 6, 7, 18, 19, and 20, but whether or not the whole of each section was included is not entirely clear. The south half of 17 was leased by Brady, and the northeast of 19 was leased by Zemple, for a term of three years covering 1922, 1923, and 1924. The south half of 17 was used by the partnership during those years, and the northeast quarter of 19 was used by the partnership in 1922, but there is testimony, undisputed, that this quarter section was not used by the partnership in 1923 or 1924.

Interveners are sons of Arthur E. Zemple and worked for him in the farming operations of the partnership up to and including the year 1924. They testified, in substance: That prior to the opening of the farming season of 1925 their father told them that he was not going to farm the south half of section 17, nor the northeast quarter of section 19 any longer, and they told him that if he would lease the land for them and board them they would work the land and give him one-fourth of the crop and the landlord one-fourth and the remaining one-half would belong to the interveners. That their father then leased the lands and sublet it to them on the foregoing terms. That they bought the necessary horses and machinery, getting it to a considerable extent on credit; that they bought the seed, farmed the land themselves, harvested the crops, and had sold to defendant, Stevens, a portion of the crop so harvested when plaintiff arrived on the scene and took possession of all of the crops that had not been sold by them. That none of the partnership horses or machinery had been used in any of the farm work on the land they had thus leased, nor did the father take any part in the working of the land. There was other testimony in the case corroborating the testimony of the interveners. Brady admits that he learned about the deal between Zemple and the interveners, and that Zemple told him he had no interest in the crops on the south half of section 17 and the northeast quarter of section 19 as early as the 10th or 12th day of July, but he nevertheless permitted interveners to continue caring for and harvesting the crops. In so far as appears in the record in this case he did not advise interveners that he claimed any interest in the crop, or that their father had no right or authority to rent the land for them. On September 12, 1925, in an action wherein Brady was plaintiff and Arthur E. Zemple defendant, which appears to have been brought for a dissolution of the partnership, and in which plaintiff in this action had been appointed as receiver, judgment was given to the effect that the partnership was dissolved; that Tschirley continue to act as receiver; that defendant deliver all property of the partnership to the receiver; that all crops raised on the south half of section 17 and the northeast quarter of section 19 and on section 18 and the west half of section 20, including all grain theretofore threshed and removed from such premises, is the property of the copartnership, subject to the landlord's claim

of one-fourth for rent, and seed liens on file in the office of the register of deeds; that the partnership is entitled to one-half of all flax grown on the premises, free of all expenses and liens of any kind. It is further adjudged that Tschirley is directed to dispose of all grain and all property belonging to the partnership and apply the proceeds to the payment of the partnership indebtedness, and the payment of $170.83 to Brady, which sum he had paid to the state for land leases out of his individual money.

While not expressly so stated, it may reasonably be inferred from the evidence that none of the land used in the business was owned by the firm or by either member of the firm. It was evidently not contemplated that all of the land in sections 6, 7, 18, 19, and 20 would *necessarily* be used in the business, for the partnership contract provided that they would conduct the business on that land, or "so much of said land as they deem necessary for the proper conduct of their business." Since the northeast quarter of 19 had not been farmed by the partnership for two years prior to 1925, it must be assumed that they had not deemed it necessary for the proper conduct of the business to make use of that land, and we can see no reason why Zemple should be precluded from renting it on his own account for the year 1925 and subleasing it to his sons, the interveners.

Brady's lease of the south half of 17 expired in the year 1924. There is no evidence in the record that that land was either necessary or deemed necessary by either member of the partnership for the conduct of the partnership business, and Zemple had concluded not to use it in the year 1925. In the absence of any evidence that it was necessary for the proper conduct of the partnership business, we cannot say that the conduct of Zemple in leasing the south half of 17 on his own account and subletting it to the interveners was any fraud upon the partnership or constituted a transaction adverse to the interests of the partnership. The partnership agreement provided that Zemple should have direct control and charge of all company property and should do and perform or have done or performed all necessary farm labor, together with the care of the live stock on the farm. We think, under these provisions, that Zemple was given some discretion in regard to the amount of land it was deemed necessary to farm for the proper conduct of the business.

This action was brought by the receiver to recover from defendant, Stevens, the value of that portion of the crop raised on the south half of 17 and northeast quarter of 19 in the year 1925, purchased by defendant from the interveners. The complaint in intervention alleged conversion by plaintiff of that portion of the grain raised by the interveners on said lands, appropriated by plaintiff to his own use, and demanded judgment for the value thereof. The jury returned a verdict for the interveners and assessed their damages at $578.80 and found a verdict for defendant upon all the issues. The court gave judgment for plaintiff notwithstanding the verdict, for the value of that portion of the grain sold to defendant, on the ground that the undisputed evidence showed that the interveners acted in bad faith and were guilty of fraud in entering into the agreement with their father for the leasing of the south half of 17 and northeast of 19, and on the further ground that the title to and ownership of the grain in question had been by this court "fully determined and the rights of the said interveners, Lester Zemple and Clarence Zemple, have been by judgment of this court prior to the commencement of this action adjudicated as between the co-partnership (Brady and Zemple) and Arthur Zemple."

From what we have already said it is obvious that the first ground upon which the order for judgment notwithstanding the verdict was based cannot be sustained. We find no evidence whatever in the record from which it can be inferred that the interveners were guilty of fraud in leasing from their father the land which they farmed in 1925. As to the second ground, that the court had already determined in another action the rights of the interveners to the crops they produced from this land in 1925, it is sufficient to say that neither of the interveners was a party to the other action, nor are they in privity with the defendant in that action. Their interest attached before the judgment in that action was rendered, and apparently before the action was commenced. They are therefore not bound by that judgment. 34 C. J. 1020. The judgment notwithstanding the verdict is reversed, and the cause remanded, with direction to the trial court to enter judgment on the verdicts returned by the jury.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.
CAMPBELL, J., dissents.